A00A1358. WILLIAMSON et al. v. HARVEY SMITH, INC. et al.
(542 SE2d 151)

POPE, Presiding Judge.

On or about August 22, 1994, Charles N. and Sallie G. Williamson entered into a New Construction Purchase and Sale Agreement with Harvey Smith, Inc. to build a house in Roswell. The contract price for the house was $331,750. During the construction process,

---

the Williamsons paid out between $46,000 and $47,000, including earnest money and funds advanced in connection with change orders. The transaction was scheduled to close on March 15, 1995. On the morning of the closing, Max Croft, an independent building inspector hired by the Williamsons, inspected the property. Based upon Croft's inspection, the Williamsons decided not to attend the closing and subsequently refused to complete their purchase of the house.

Twelve days later, on March 27, 1995, the Williamsons filed suit against the corporation and Harvey Smith. HSI counterclaimed. Although both sides asserted a number of claims, several were dropped during the pendency of the litigation. The matter proceeded to trial on the Williamsons' claims for breach of contract, fraud, conversion and attorney fees as well as HSI's counterclaim for breach of contract and attorney fees. The jury awarded HSI damages on its counterclaim in the amount of $15,000 along with attorney fees of $38,034.13. The trial court subsequently denied the Williamsons' motion for new trial, and the Williamsons appeal.[1]

1. The Williamsons' first contention on appeal is that the jury's verdict was contrary to the evidence presented at trial. Under the terms of the parties' contract, construction was to be completed "in accordance with all applicable governmental regulations, ordinances, and codes." The Williamsons argue that the evidence showed that HSI failed to comply with the applicable codes as required by the parties' contract.

On appeal, our review of the evidence is limited to a consideration of whether there was any evidence to support the jury's verdict:

> Where a jury returns a verdict and it has the approval of the trial judge, the same must be affirmed on appeal if there is any evidence to support it as the jurors are the sole and exclusive judges of the weight and credit given the evidence. The appellate court must construe the evidence with every inference and presumption in favor of upholding the verdict, and after judgment, the evidence must be construed to uphold the verdict even where the evidence is in conflict. As long as there is some evidence to support the verdict, the denial of defendant's motion for . . . new trial will not be disturbed.

(Citation and punctuation omitted.) *MARTA v. Green Intl.*, 235 Ga.

---

[1] The original order in the case, entered on February 9, 1999, mistakenly entered judgment on the counterclaim in favor of both HSI and Smith, individually. But only HSI asserted a counterclaim. Pursuant to consent order, that judgment was set aside and a new one entered on April 12, 1999.

App. 419, 420 (1) (509 SE2d 674) (1998).

The Williamsons presented two experts at trial who testified that the construction did not comply with the applicable codes. But HSI presented the testimony of two county building inspectors and an independent expert witness stating that the construction did comply with the governing codes. This evidence presented a conflict for the jury to resolve, "and it is not within our province to second-guess their factual findings." (Citations and punctuation omitted.) *Burchfield v. Madrie*, 241 Ga. App. 39, 42 (2) (524 SE2d 798) (1999).

Moreover, we note that the provision upon which the Williamsons rely also provides that the project was to "be considered completed and ready to close upon issuance of a Certificate of Occupancy or Final Inspection Certificate issued by the city or county in which the Property lies." And the contract further provides that HSI would not be "governed by outside inspections other than those required by governmental agencies." It is undisputed that Cobb County issued a Certificate of Occupancy on the property prior to closing and that the certificate represented the county inspectors' findings that the construction complied with the applicable codes.

Accordingly, we find the evidence was sufficient to support the jury's verdict in favor of HSI.

2. The Williamsons also assert that the award of $15,000 was contrary to law because it conflicted with the contract's liquidated damages provision. That provision states that HSI is "entitled to retain the earnest money as full and complete liquidated damages for such default . . ." if the Williamsons did not fulfill their obligations under the contract. In lieu of accepting the earnest money as liquidated damages, the contract provides that HSI could sue for specific performance. The Williamsons argue that because HSI has retained the earnest money, it is not entitled to any further recovery. See OCGA § 13-6-7.

Generally, the issue of whether a liquidated damages provision is enforceable is a question of law for the court. *Swan Kang, Inc. v. Kang*, 243 Ga. App. 684, 686 (1) (534 SE2d 145) (2000). But the record shows that the Williamsons did not raise the issue of liquidated damages before the trial court in any pleading, pre-trial motion or even in the pre-trial order. Nor did they assert the issue at trial. They failed to object to Harvey Smith's testimony detailing his damages arising from the breach of contract; they failed to move for directed verdict on the issue of damages after the evidence showed that HSI had retained the earnest money; and they failed to object when the issue of damages was submitted to the jury. In fact, the record shows that aside from several isolated cross-examination questions, the first time they raised the issue was in their motion for new trial.

Under these circumstances, we find that the Williamsons failed to properly raise the issue for appellate review:

Appellate courts review enumerations for correction of errors of law committed by the trial court — where motions or objections are properly presented for a ruling by the trial court. Enumerated errors which raise issues for the first time in a motion for new trial or on appeal present nothing for review.

(Citations and punctuation omitted.) *Cohen v. Lowe Aviation Co.*, 221 Ga. App. 259, 261 (2) (470 SE2d 813) (1996). But cf. *Sweatt v. Intl. Dev. Corp.*, 242 Ga. App. 753 (531 SE2d 192) (2000) (vacating arbitration award in excess of liquidated damages provision where issue properly preserved for appellate review).

3. The Williamsons further assert that the trial court erred in qualifying Macon Gooch as an expert because the evidence showed that he was not properly licensed at the time he conducted his inspection of the property. We find no error.

"The question of whether a witness is qualified to render an opinion as an expert is a legal determination for the trial court and will not be disturbed absent a manifest abuse of discretion. OCGA § 24-9-67; [cits.]" *Dayoub v. Yates-Astro Termite Pest Control Co.*, 239 Ga. App. 578, 579-580 (1) (521 SE2d 600) (1999). In this case, the evidence showed that Gooch held a license in his individual name at the time he conducted the inspection. He was unaware, however, that he was also required to get a license in the name under which he conducted business, "Marvin Gooch, III, Building Consultant." And his company did not possess its own separate license until 1998 when he learned of the rule. But this omission did not prevent Gooch's qualification as an expert. "The possession of a license in Georgia does not go to qualification as an expert witness but may go to the weight and credibility that a jury gives to such expert's opinion." (Citation and punctuation omitted.) Id. at 580 (1).

The Williamsons do not question Gooch's qualifications on any other ground. Therefore, we find that the trial court did not abuse its discretion in qualifying Gooch as an expert.

4. Next the Williamsons argue that the trial court should not have allowed Gooch to testify from a report that may have been prepared by someone else in his office, which they assert was hearsay. Gooch could not recall whether he had, in fact, prepared the report. But the Williamsons raised no objection to Gooch's testimony on this ground and thus waived their objection. *In the Interest of M. D.*, 244 Ga. App. 156, 158 (2) (a) (534 SE2d 889) (2000).

Even if Gooch did not prepare the report, he testified that he

went back to the property and verified the report's contents. Moreover, the fact that Gooch may have testified, in part, from hearsay does not render his testimony inadmissible:

> [E]ven when an expert's testimony is based on hearsay, the lack of personal knowledge on the part of the expert does not mandate the exclusion of the opinion, but, rather, presents a question as to the weight which should be assigned the opinion. The evidence should go to the finder of fact for whatever it's worth. [Cit.]

(Punctuation omitted.) *In the Interest of M. D.*, 244 Ga. App. at 158 (2) (b). Accordingly, there was no error in admitting Gooch's testimony.

5. The Williamsons also object to the trial court's qualification of defendant Harvey Smith as an expert. They argue that the court erred in qualifying a party as an expert. But there is no rule barring a party from testifying as an expert. See, e.g., *Cornelius v. Macon-Bibb County Hosp. Auth.*, 243 Ga. App. 480, 483 (1) (533 SE2d 420) (2000) (defendant doctor testified as expert in medical malpractice action); *Cambron v. Canal Ins. Co.*, 246 Ga. 147, 150 (5) (269 SE2d 426) (1980) (defendant lawyer testified as expert in action to set aside prior judgment). The fact that Smith was a party to the case simply goes to the weight and credibility of his expert testimony, not to his qualifications as an expert.

The Williamsons do not challenge Smith's qualifications on any other grounds. Smith testified that he had worked in construction almost all of his life and had built over 100 houses. The trial court concluded that he had "more knowledge than the average citizen" and qualified him as an expert.

> To qualify as an expert [pursuant to OCGA § 24-9-67], generally all that is required is that a person must have been educated in a particular skill or profession; his special knowledge may be derived from experience as well as study. Formal education in the subject at hand is not a prerequisite for expert status.

(Citations and punctuation omitted.) *Coursey Bldg. Assoc. v. Baker*, 165 Ga. App. 521, 522 (1) (301 SE2d 688) (1983). We find no abuse of discretion by the trial court.

6. The Williamsons further contend that the trial court erred in allowing Smith to testify as to damages without providing documentary evidence to support his testimony. The trial court sustained the Williamsons' objection to the introduction of a summary sheet detailing HSI's damages because HSI did not have the supporting docu-

mentation. And aside from an objection that a portion of the damages related to a corporate entity other than HSI, they raised no further objection during the remainder of Smith's testimony detailing damages. Therefore, they waived any objection that Smith's testimony was inadmissible for want of documentation, "because the objection at trial must be on the specific ground enumerated as error on appeal and not as a new ground raised for the first time on appeal." (Citations omitted.) *Witty v. McNeal Agency*, 239 Ga. App. 554, 562 (5) (521 SE2d 619) (1999).

Moreover, HSI did introduce documentary evidence to support at least some of its claimed damages. It introduced a copy of the promissory note on the property to support Smith's testimony that HSI paid a total of $45,224 in monthly mortgage payments between the time of the failed closing and when the property was sold. HSI also introduced the closing statement from the sale to substantiate Smith's testimony that HSI had paid $9,100 in taxes on the property. Accordingly, we find no error.

7. The Williamsons also contend that there was insufficient evidence to support the award of attorney fees under OCGA § 13-6-11. We agree that a bona fide controversy existed between the parties in this case precluding an award of damages for stubborn litigiousness or unnecessary trouble and expense under that section. *Graves v. Diambrose*, 243 Ga. App. 802, 803 (2) (534 SE2d 490) (2000); *Plemons v. Weaver*, 243 Ga. App. 464, 466 (2) (533 SE2d 747) (2000).

But we find there was sufficient evidence of bad faith to submit the issue of attorney fees to the jury:

> [W]hether or not the [Williamsons] acted in bad faith in [their] contractual relations is an issue for the jury to determine. Bad faith warranting an award of attorney fees must have arisen out of the transaction on which the cause of action is predicated. It may be found in [the Williamsons'] carrying out the provisions of the contract, that is in how [they] acted in [their] dealing with [HSI]. Bad faith other than mere refusal to pay a debt is sufficient, provided it is not prompted by an honest mistake as to one's rights or duties but by some interested or sinister motive. So [the Williamsons] can be liable for attorney fees if they committed the breach.

(Citations and punctuation omitted.) *Plemons v. Weaver*, 243 Ga. App. at 466 (2).

Here the evidence showed that after receiving their inspector's report, the Williamsons cut off all further dealings with HSI despite the fact that the contract required them to furnish HSI with a list of

defects and allow it the opportunity to correct any deficiencies. Smith testified that when he called the Williamsons the night of the failed closing, they directed him to make all further communications through their lawyer. He was required to furnish a copy of the signed blueprints before they would even give him a copy of the inspector's report, and they filed suit against him shortly after the scheduled closing. Based upon this evidence, the jury was authorized to find that the Williamsons had acted in bad faith in ignoring their obligations under the contract.

8. Nevertheless, we agree with the Williamsons that the jury was not authorized to award HSI its total attorney fees of $38,034.13 in this case. As a general rule, only a plaintiff is authorized to recover attorney fees under OCGA § 13-6-11. But where a defendant asserts an independent counterclaim, he may recover litigation expenses under OCGA § 13-6-11 in connection with that claim. *Gardner v. Kinney*, 230 Ga. App. 771, 772 (498 SE2d 312) (1998). The defendant is limited, however, to recovering only the portion of his attorney fees allocable to the prosecution of his counterclaim. *Arford v. Blalock*, 199 Ga. App. 434, 439 (10) (405 SE2d 698) (1991). Therefore, HSI had "the burden of proof and must segregate out the hours that are recoverable from those hours not recoverable. [Cit.]" *Southern Co. v. Hamburg*, 233 Ga. App. 135, 139 (503 SE2d 383) (1998).

HSI presented no evidence, however, "from which the jury could determine what portion of the total amount of attorney time and litigation expenses incurred . . . was attributable to [HSI's counterclaim]." *Professional Consulting Svcs. &c. v. Ibrahim*, 206 Ga. App. 663, 666 (3) (426 SE2d 376) (1992). The evidence showed that HSI was seeking to recover all attorney fees billed over the four-year history of the case. In fact, HSI's attorney testified that the fees were increased by the Williamsons' asserting a number of claims which they later dropped, but which HSI was required to defend. Accordingly, the award of attorney fees is reversed. See *Cherokee Ins. Co. v. Lewis*, 204 Ga. App. 152, 154-155 (2) (418 SE2d 616) (1992); *Arford v. Blalock*, 199 Ga. App. at 440.

*Judgment affirmed in part and reversed in part. Miller and Mikell, JJ., concur.*

DECIDED NOVEMBER 9, 2000.

*John R. Burdges*, for appellants.
*Macey, Wilensky, Cohen, Whittner & Kessler, Susan L. Howick*, for appellees.